IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EVELYN HARRINGTON,**            Case 1:14 CV 1833

    Plaintiff,

    v.                                       Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                 MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Evelyn Harrington filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 13). For the reasons stated below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on September 25, 2009, alleging a disability onset date of January 7, 2009. (Tr. 428-38, 458). Plaintiff applied for benefits due to arthritis and pain in her knees and left arm. (Tr. 494). Her claim was denied initially (Tr. 320-27) and upon reconsideration (Tr. 334-46). Plaintiff requested a hearing before an administrative law judge ("ALJ") on July 8, 2010. (Tr. 347). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on July 19, 2011, after which the ALJ found Plaintiff not disabled. (Tr. 304-19). The Appeals Council remanded the case to another ALJ for

re-evaluation of Plaintiff's claims on December 28, 2012. (Tr. 299-303). A second hearing was held on July 1, 2013, at which both Plaintiff, represented by counsel, and a VE testified. (Tr. 241-60). The ALJ found Plaintiff not disabled and this time the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1, 223-31); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff filed the instant action on August 19, 2014. (Doc. 1).

## FACTUAL BACKGROUND

### *Personal Background and Testimony*

Plaintiff was born on December 14, 1955 and was 58 years old as of her July 2013 hearing before an ALJ. (Tr. 295). She had completed high school. (Tr. 467). Plaintiff lived with her daughter and granddaughter. (Tr. 277). Her daughter performed all the cooking, cleaning, and laundry. (Tr. 278). Plaintiff had past work experience in sales where she was constantly on her feet occasionally required to lift. (Tr. 248).

She characterized her knee pain as stabbing and aching. The pain was present before her knee replacements and persisted, although marginally improved, after the surgeries. Plaintiff did not take medication for her pain but did have injections, which she found unhelpful and she also used a cane. (Tr. 246, 250, 266-67). She complained of tendonitis in her left shoulder and bursitis in both hips which caused soreness and pain. (Tr. 246-47). Plaintiff remarked she got stiff if she sat for too long and estimated she could only sit for approximately 30 minutes before needing to move. (Tr. 250).

*Relevant Medical Evidence*[1]

In August 2007, Plaintiff was seen at Fairview General Hospital with complaints of knee pain and discharged home with a diagnosis of arthritis/degenerative joint disease. (Tr. 562, 621). In October 2008, she returned to the hospital with complaints of left knee pain and she was diagnosed with a knee sprain. (Tr. 587-92). A month later, Plaintiff returned complaining of pain and stiffness in her right knee. (Tr. 596). On examination, the knee was tender and swollen; she was discharged with a prescription for ibuprofen and diagnosed with arthritis/degenerative joint disease. (Tr. 596-601, 616). In early December 2008, Plaintiff saw Duret Smith, M.D., who observed antalgic gait on the right and tenderness; he diagnosed degenerative joint disease in her right knee and recommended limited activity and an MRI. (Tr. 633).

Shortly thereafter, Plaintiff began physical therapy at the Lakewood YMCA with a goal of reducing pain and improving range of motion, strength, and walking. (Tr. 641). She cancelled and missed multiple appointments throughout December and January. (Tr. 644-46). However, by February 18, 2009, she reported her knee pain was better and had been reduced to about a four out of ten on a severity scale. (Tr. 648). The therapist remarked her range of motion was improved and her strength increased. (Tr. 651).

Throughout 2009, Plaintiff was under the care of Cory Fisher, D.O., who diagnosed her with osteoarthritis of the right knee based upon x-rays taken at Fairview hospital in 2007 and 2008. (Tr. 616, 621, 675). He treated her with cortisone shots and reported that Naproxen was successful at controlling her symptoms. (Tr. 675-76). In November 2009, Plaintiff was seen at Westlake Family Health Center where it was observed she had no effusion, full range of motion,

---

1. Plaintiff submitted additional medical evidence to the Appeals Council after the second hearing.  The majority of that evidence is not summarized herein because it was not before the ALJ and, thus, is not proper for review absent a request for a sentence six remand. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146 (6th Cir. 1996).

3

no tenderness, and no pain in either knee, although she reported stiffness and soreness. (Tr. 668). In December 2009, despite finding her right knee normal on examination, Dr. Fisher opined she was limited from prolonged walking or standing and could not bend or lift due to pain but could sit. (Tr. 675-76, 680).

In April 2010, Plaintiff reported sharp, burning pain bilaterally in her knees and discomfort in her left shoulder to Dr. Fisher. (Tr. 714). On examination, she had tenderness and full range of motion in both knees, though some crepitance was noted; Dr. Fisher referred her to an orthopedic surgeon for more injections and consultation. (Tr. 715). In May, Plaintiff received injections in her knee for pain relief from Wayne Daum, M.D., who reported "[r]adiographically, her arthritis is not that bad."  He had concerns about her motivation, and recommended she "be vigorous in her physical therapy". (Tr. 756, 760, 763). Throughout the remainder of 2010 and into 2011, Plaintiff continued to complete routine follow-ups with Dr. Fisher, but no new treatments for her osteoarthritis were prescribed. (Tr. 752, 812, 816, 824, 826, 914, 919).

In May 2011, Dr. Fisher completed a medical source statement regarding Plaintiff where he reported she was limited to carrying twenty pounds occasionally and five pounds frequently, standing or walking for up to two hours a day but not for more than fifteen minutes at a time, sitting for six hours a day but never for longer than a half hour at a time, never balancing, stooping, crouching, crawling, kneeling, pushing, or pulling. (Tr. 805-06). His basis for these restrictions was the osteoarthritis shown in the x-rays and Plaintiff's reports of stiffness and pain when sitting. (Tr. 805-06). He also opined she would need additional rest periods beyond normal breaks but it was unknown whether she required a sit/stand option. (Tr. 806).

On November 29, 2011, Plaintiff presented at Fairview Hospital with complaints of left shoulder pain. (Tr. 925). An x-ray revealed a "deformity of the greater tuberosity" and "tiny

ossific density". (Tr. 928). She was diagnosed with shoulder strain and discharged home. (Tr. 928). A few weeks later, Plaintiff saw Mark Schickendantz, M.D., due to severe shoulder pain, at which time she displayed a reduced range of motion. (Tr. 935-36). Dr. Schickendantz recommended an MRI and physical therapy. (Tr. 936). The MRI revealed "some chronic tendonosis…[and] small joint effusion." (Tr. 342). However, Plaintiff had not attended any physical therapy because she had no transportation. (Tr. 942).

Plaintiff saw Kim Stearns, M.D., for bilateral knee pain in February 2012; Dr. Stearns observed trace effusions bilaterally, crepitance, tenderness, and painful range of motion. (Tr. 967). An x-ray from earlier in the year showed "some progression of the osteoarthritic changes, primarily in narrowing of both medial compartments". (Tr. 977). Dr. Stearns discussed bilateral knee replacements but Plaintiff opted for injections. (Tr. 967). However, a few months later, in July 2012, Plaintiff underwent bilateral total knee replacements. (Tr. 999-1026). Following the procedures, it was recommended that Plaintiff begin physical therapy to improve activity tolerance. (Tr. 1032, 1034). She attended numerous sessions throughout the latter half of 2012 where she tolerated the sessions well and her ambulation improved. (Tr. 1257-1316).

Dr. Stearns saw Plaintiff in August for a follow-up and reported Plaintiff was doing great; noting specifically that Plaintiff was flexing to 90 degrees and receiving in-home therapy. (Tr. 1063). A few weeks later, Dr. Stearns recommended weaning Plaintiff off the walker for a cane. (Tr. 1066). At this time, Dr. Stearns commented that she believed total knee replacements and severe arthritis was a permanent partial disability which would restrict Plaintiff's ability to work, stand, walk, climb, squat, and lift. (Tr. 1066). Plaintiff continued to improve following surgery such that her flexion in both knees had reached 100 degrees, with full extension possible, and she was able to ambulate without any support. (Tr. 1069-70, 1078, 1177, 1326, 1506).

5

During a physical therapy evaluation in May 2013, Plaintiff reported she could walk between rooms with little difficulty, could stand for one hour with moderate difficulty, and was unable to walk two blocks without extreme difficulty. (Tr. 1369). On examination, Plaintiff walked 100 feet without any gait abnormalities being observed. (Tr. 1370).

Plaintiff continued to complain of left shoulder pain which she characterized as sharp and stabbing but she also indicated steroid injections were helpful. (Tr. 1194, 1424). On examination, her shoulder was normal with a decreased range of motion but full strength. (Tr. 1195, 1424, 1437, 1446). In June 2013, she had an MRI of her shoulder which showed a small tear, tendonosis, and mild degenerative changes to the joint. (Tr. 1441). Yuji Umeda, M.D., recommended physical therapy and further steroid injections. (Tr. 1424).

*State Agency Examiners*

On February 6, 2010, Lynne Tordello, M.D., completed a physical RFC assessment on Plaintiff. (Tr. 705). She opined Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand, walk, or sit for six hours a day, and had unlimited ability to push and pull. (Tr. 706). She based this opinion on the record evidence of degenerative joint disease, Plaintiff's allegations, reports of normal range of motion and no effusion, and the ameliorative effects of Naproxen. (Tr. 707). Overall, Dr. Tordello opined Plaintiff could perform light work, although she should avoid exposure to cold weather and hazards. (Tr. 707).

In June 2010, Cindy Hill, M.D., completed a physical RFC assessment regarding Plaintiff's abilities. (Tr. 728). She concurred with Dr. Tordello's restrictions above, but also opined Plaintiff would be limited in reaching with her right upper extremity. (Tr. 729, 731).

*2011 VE Testimony*

The VE, Thomas Nimberger, testified Plaintiff's past work as credit card saleswoman in 2005 was mostly akin to a marketing agent, was performed at the light exertion level, and had a specific vocational preparation ("SVP") of 2.[2] The ALJ hypothesized an individual who could lift or carry five pounds frequently and twenty pounds occasionally, could stand or walk for two hours, could sit for six hours, occasionally crawl, balance, stoop, crouch, kneel, push, pull, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (Tr. 282). The VE stated such person could perform Plaintiff's past work as a telemarketer and as a credit card saleswoman, as it is typically performed at the sedentary level. (Tr. 282).

On cross-examination, the VE clarified that Plaintiff's past work as a credit card saleswoman did not fit exactly into the Dictionary of Occupational Titles ("DOT") definition of marketing clerk, where he put it. (Tr. 285). He further clarified that at times Plaintiff performed the work at either light and sedentary exertional levels, which differentiated it from the DOT definition. (Tr. 284-86). He also opined that if the individual had to elevate her legs to 90 degrees it would eliminate all work. (Tr. 292).

*2013 VE Testimony*

The VE, Carol Mosely, testified Plaintiff's past work in 2005 was most closely defined as a sales agent and performed at the light exertion level with a SVP 5.[3] (Tr. 252). The VE stated Plaintiff's sales skills would transfer to sedentary work despite the fact she could no longer

---

2. Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. There are nine SVP levels. An SVP 2 is defined as any training beyond short demonstration up to and including one month. UNITED STATES DEPARTMENT OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, APPENDIX C (4th Ed., Rev. 1991), *available at* www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM
3. An SVP 5 is training over 6 months up to and including one year. *Id.*

perform her past work. (Tr. 253-54). The VE further testified that for a hypothetical worker of Plaintiff's age, the SVP of any relevant position would have to be low, meaning the vocational adjustment be minimal. (Tr. 254-56). The ALJ hypothesized a worker with Plaintiff's skills, education, age, experience, and limitations, and the VE concluded work in the economy was available as a telephone solicitor and charge account clerk; both of which would not require vocational adjustments. (Tr. 254-57). The VE clarified these positions were those directly related to her past work, and other jobs would be available although they would require vocational adjustments. (Tr. 257).

On cross-examination, the VE testified that if Plaintiff was off task more than fifteen percent of the day she could not sustain competitive employment. (Tr. 258). In a completely different hypothetical where the worker is limited to lifting or carrying five pounds frequently, twenty pounds occasionally, standing or walking for two hours, sitting for six, occasionally climbing ramps and stairs, never balance, stoop, crouch, kneel, crawl, push, or pull, would require the use of a cane, and would need two additional unscheduled breaks a day; the VE testified there would be no work for such a person. (Tr. 258-59). The VE clarified that from the hypothetical, the two additional unscheduled breaks and use of a cane were her main reasons for finding the individual unemployable. (Tr. 259).

*ALJ Decision*

In August 2013, the ALJ found Plaintiff had the severe impairments of bilateral degeneration of the knees after total knee replacement and obesity; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 226). The ALJ then found Plaintiff had the RFC to perform sedentary work except that she could only stand or walk for two hours out of an eight hour day; sit for six hours out of the day; only lift, carry, push, or pull up to ten

pounds; never use ladders, ropes, or scaffolds; occasionally climb ramps and stairs; never kneel, crouch, or crawl; and only occasionally stoop. (Tr. 226). Based on the VE testimony, the ALJ found Plaintiff had transferable sales skills and could perform work as a telephone solicitor or charge account clerk; and thus, was not disabled. (Tr. 229-31).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) he failed to resolve conflicts in vocational evidence regarding the SVP of Plaintiff's past work; and (2) the RFC lacked substantial evidence. (Doc. 16, at 8, 12). Each argument will be addressed in turn.

### *Conflicts in Vocational Evidence*

Plaintiff first argues the vocational evidence available is conflicting, primarily at two

10

prior points in the record Plaintiff's past work had been identified as SVP 2 but during the July 2013 hearing the VE classified her past work as SVP 5; a discrepancy which required discussion. (Doc. 16, at 8-12). Plaintiff further asserts there is conflict between the VE testimony given at the second hearing and the DOT job titles identified, which if true, requires explanation pursuant to SSR 00-4p. (Doc. 16, at 8-12).

Generally speaking, a VE's testimony identifying specific jobs available in the regional economy that an individual with the claimant's limitations could perform can constitute substantial evidence supporting a Step Five determination that the claimant can perform other work. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004). One of the most common tools utilized by VE's during testimony is the DOT, which is a list of "maximum requirements of occupations as generally performed," however, a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *2. Indeed, a VE has the ability to craft his answer in response to an individualized hypothetical RFC with potential limitations unforeseen by the DOT. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) ("[An] ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor her finding to an 'individual's particular residual functional capacity'").

The ALJ has an affirmative responsibility to "inquire, on the record, as to whether or not there is [ ] inconsistency" between the VE's testimony and the DOT. SSR 00-4p, 2000 WL 1898704. Beyond this initial inquiry, the ALJ is under no obligation to further investigate the accuracy of a VE's testimony "especially when the claimant fails to bring any conflict to the attention of the [ALJ]." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009); *Kane v. Comm'r of Soc. Sec.*, 2013 U.S.

Dist. LEXIS 58012, at *50 (E.D. Mich.). If no conflict is identified at the hearing, the ALJ is only required to develop the record with further inquiry if the conflict between the VE's testimony and the DOT was obvious enough the ALJ should have identified them without any assistance. *Id.;Lindsley*, 560 F.3d at 603; *Antico v. Astrue*, 2012 WL 5438988, at *10 (S.D. Ohio). If the VE chooses to depart from the DOT, SSR 00-4p requires that "the adjudicator must resolve this conflict before relying on the vocational expert or vocational specialist evidence to support a determination or decision that the individual is or is not disabled." 2000 WL 1898704. The ALJ must then explain his resolution of the conflict in his decision. *Id.*

Regardless, a violation of SSR 00-4p does not automatically require remand. *See Brown v. Barnhart*, 408 F. Supp.2d 28, 35 (D.D.C. 2006) ("Even if SSR 00-4p places an affirmative duty on the judge, such a procedural requirement would not necessarily bestow upon a plaintiff the right of automatic remand where that duty was unmet."); *Boone v. Barnhart*, 354 F.3d 203, 206 (3rd Cir. 2003) ("[w]e do not adopt a general rule that an unexplained conflict between a [VE's] testimony and the DOT necessarily requires reversal"); *Carey v. Apfel*, 230 F.3d 131, 146–147 (5th Cir. 2000). Though the Sixth Circuit has not definitively resolved the issue, courts within this circuit "tend to hold that the technical error of failing to inquire does not constitute reversible error." *Bratton v. Astrue,* 2010 WL 2901856, at *4 (M.D.Tenn.2010) (citing *Wix v. Astrue,* 2010 WL 520565, at *7 (M.D.Tenn.); *Fleeks v. Comm'r of Soc. Sec.,* 2009 WL 2143768 (E.D.Mich.); *McEwen v. Astrue,* 2009 WL 5196061, at *4 (M.D.Tenn.)); *Miller v. Comm'r of Soc. Sec.,* 2012 WL 398650, at *15 (N.D. Ohio).

As to Plaintiff's first argument, there is no requirement that the ALJ resolve conflicts between vocational evidence provided by either state agency employees or by other VEs. (Tr. 282-92, 489). These are opinions, and thus can be weighed accordingly when reviewing the

entirety of the record. Here, VE Mosely based her opinion upon a review of the record evidence and Plaintiff's testimony about her job duties and physical requirements; the ALJ was entitled to rely on her experience in concluding what job title most closely mirrored Plaintiff's past work. (*See* Tr. 252); *see Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) ("the ALJ and [VE] are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications."); *see also Beinlich,* 345 F. App'x at 168. Simply because the VE's conclusion was not a perfect fit for a DOT category does not render her opinion insupportable. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009). Further, the Plaintiff cites to no authority which requires the ALJ to review, let alone resolve conflicts, between opinion evidence of VEs or state employees. Moreover, Plaintiff did not raise this issue at the hearing such that the ALJ would have had the opportunity to discuss this potential conflict with VE Mosely. *See Schiedebusch v. Comm'r of Soc. Sec.,* 536 F. App'x 637, 649-50 (6th Cir. 2013). Plaintiff's first argument is not well-taken.

Next, Plaintiff asserts the ALJ failed to perform the proper analysis under SSR 00-4p requiring the ALJ to resolve conflicts between the DOT and VE testimony. However, there is no conflict between the VE's testimony and the DOT. Rather, she appropriately identified the exertion level, SVP, and DOT identification number for a sales agent,[4] and thus, SSR 00-4p does not apply. (Tr. 252). Although the ALJ failed to illicit confirmation of the fact that there was no

---

4. Section 250.357-026 Sales Agent describes the position as follows: "Sells services, such as credit, financial, insurance, employee investigation reports, and credit-rating books to business establishments: Calls on establishments, such as financial institutions and commercial and industrial firms, to explain services offered by agency. Explains advantages of using impartial and factual reports and data as basis for assigning credit ratings, insurance, or security risks. May also sell equipment, such as portable teletype terminal units, for use in immediate retrieval of computerized data. *GOE: 08.01.02 STRENGTH: L GED: R4 M3 L4 SVP: 5 DLU: 77"*. UNITED STATES DEPARTMENT OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, OCCUPATIONAL DEFINITIONS-CLERICAL AND SALES OCCUPATIONS (4th Ed., Rev. 1991), *available at* www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02C.HTM

conflict between the VE's testimony and the DOT on the record, as required by SSR 00-4p, the Court firmly believes this falls into the category of harmless error, especially when it is so easily determinable that the VE correctly stated the information for the ALJ. Just because Plaintiff disagrees with the VE's characterization of her past work does not mean it is inconsistent with the DOT as a whole. *See Kane v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 58012, at *52-53 (E.D. Mich.). Nor was the VE's potential mischaracterization of Plaintiff's past work such an inherently obvious error that the ALJ should have known to inquire further regarding the position. *See Lindsley*, 560 F.3d at 603. Indeed, the very reason VEs testify is because of their expert knowledge of the occupations contained within the DOT. The ALJ did not err by not discussing conflicts in the VE's testimony because the VE did not testify to any deviations from the DOT, rather she appropriately summarized the position of sales agent. (Tr. 252). Aside from the ALJ's failure to inquire about the VE's testimony consistency, which is deemed harmless in light of the VE's testimony overall, the ALJ did not commit error in his treatment of the VE's opinion.

### *RFC is supported by Substantial Evidence*

Plaintiff's argument regarding the RFC is twofold: first, she alleges the ALJ erred by only giving significant weight to part of Dr. Fisher's May 2011 opinion; and second, the ALJ erred in not addressing her shoulder limitations in the RFC. (Doc. 16, at 12-16). The first sub-argument is essentially a challenge under the treating physician rule and thus, the Court will address it as such.

### *Treating Physician*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.

2007); *see also* SSR 96-2p, 1996 WL 374188. A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

The ALJ gave Dr. Fisher's May 2011 opinion significant weight except as to the restrictions that she could only stand for fifteen minutes at a time and could only sit for 30 minutes at a time. (Tr. 228). To justify this decision, the ALJ noted there were no objective

15

findings to support any limitations on sitting, these restrictions were inconsistent with Dr. Fisher's own observations, and Plaintiff had not been diligent in her physical therapy. (Tr. 228).

These are good reasons for discounting portions of Dr. Fisher's opinion; first, there is no objective evidence to support limitations in sitting nor does Plaintiff cite to any in her brief. In fact, the first mention of a sitting limitation is in Dr. Fisher's May 2011 opinion and is supported solely by Plaintiff's subjective complaint that she has pain and stiffness when seated. (Tr. 805). Second, on the day he completed this opinion Dr. Fisher made no findings as to her musculoskeletal problems and had not previously found such problems at other appointments. (*See* Tr. 675-76, 752, 812, 816, 824, 826, 826-27, 914, 919). Lastly, Plaintiff's willingness to complete and participate in physical therapy is relevant, although minimally. A Plaintiff's credibility can be affected by her willingness to participate in treatment and here, it is evident that physical therapy improved her condition but she was unmotivated to complete it. (*See* Tr. 648, 648, 651, 760, 763, 1257-1316); *see Blacha v. Sec'y of Health and Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990). Dr. Fisher's opinion is in part based upon the information provided to him by Plaintiff; therefore, to some degree Plaintiff's credibility affects the weight of Dr. Fisher's opinion, especially when objective evidence does not wholly support the limitations.

Plaintiff's lack of motivation coupled with the lack of objective findings and inconsistent treatment records are good reasons for discounting some of the restrictions opined by Dr. Fisher. Importantly, the ALJ did not reject the entirety of the opinion. Rather, only those limitations not supported by objective evidence were rejected and, in contrast, he accepted the restriction that Plaintiff could not stand for more than two hours in a day. (Tr. 228); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's

[RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment."). Plaintiff does little more than ask this Court to re-evaluate the evidence. As here, where the Court finds substantial evidence supports the decision of the ALJ, the Court will not overturn the administrative decision. *Jones,* 336 F.3d at 477.

*RFC*

Plaintiff's second sub-argument concerns the lack of push/pull limitation in the RFC despite the fact that the ALJ accorded Dr. Fisher's May 2011 opinion, which stated she could rarely push or pull, significant weight. (Tr. 228); (Doc. 16, at 15). A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. The RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5.

Contrary to Plaintiff's assertion, there is no evidence the ALJ discounted this portion of Dr. Fisher's opinion. As stated above, he rejected the limitations on sitting and standing but accorded the rest of the opinion significant weight. (Tr. 228). The fact that the RFC does not contain the verbatim restriction regarding Plaintiff's push/pull ability is not remandable error. Here, the ALJ did include a push/pull restriction of not more than ten pounds, thus, it is evident he did not ignore Dr. Fisher's concerns regarding this limitation, but, rather, based the restriction

17

on available evidence that her shoulder problems were mild. (Tr. 226, 342, 928, 935-36).

Plaintiff argues the MRI from June 2013 supports the need for a more restrictive push/pull limitation because it shows tendonosis, a small tear, and mild degenerative joint disease. (Tr. 1441). However, Defendant is correct in asserting that this MRI evidence is not properly reviewable by this Court. "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). The Appeals Council considered the additional evidence included at Exhibits 49F-55F, including the MRI upon which Plaintiff based her argument and declined to alter the ALJ's decision. (Tr. 2).

The Court can review additional evidence pursuant to a request for remand under sentence six of 42 U.S.C. § 405(g), but Plaintiff did not assert that remand was appropriate nor did she argue that this evidence was new or material as would be required. *Cline,* 96 F.3d at 148. Furthermore, this evidence was in existence prior to the ALJ hearing thus, she also had to show good cause for why it was not submitted to the ALJ for review initially. *Id.* Regardless, Plaintiff bears the burden of proving the necessity of a sentence six remand and she has not done so. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Considering the evidence available to the ALJ and the discretion he has in constructing an RFC, the Court finds substantial evidence exists to support the RFC as written. Thus, Plaintiff's second assignment of error is overruled.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the

undersigned finds the Commissioner's decision denying DIB and SSI is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.


                                         s/James R. Knepp II
                                         United States Magistrate Judge